09CV2286
JUDGE HIBBLER
MAGISTRATE JUDGE MASON
AO

# EXHIBIT 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| JAMES ROWE, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **09CH05166** |
| UNICARE LIFE AND HEALTH INSURANCE COMPANY, and WELLPOINT, INC., both Indiana Corporations, | ) ) ) ) ) | |
| Defendants. | ) | |

### CLASS ACTION COMPLAINT

NOW COMES James Rowe (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, and complains of Unicare Life and Health Insurance Company ("Unicare") and Wellpoint, Inc. ("Wellpoint") (collectively "Defendants"), as follows:

### PARTIES

1. Plaintiff, James Rowe, is an individual and a resident of Cook County, Illinois.

2. UniCare conducts substantial business in Illinois and throughout the United States. Unicare is a subsidiary of Wellpoint.

3. Defendant, Wellpoint, is the parent company of UniCare. Wellpoint conducts substantial business in Illinois and throughout the United States.

### JURISDICTION

4. Defendants do a substantial amount of business in the Illinois, making jurisdiction proper under 735 ILCS 5/2-209(a)(1).

5.  Defendants conduct substantial business in Cook County, Illinois, making venue proper under 735 ILCS 5/2-101.

## GENERAL ALLEGATIONS

6.  Defendants are national health care insurance corporations doing business in and throughout the United States. Wellpoint claims to be the largest publicly traded commercial health benefits company in the United States and the largest health benefits company in terms of commercial membership, with medical enrollment of 34.8 million members.

7.  In the regular course of their business, Defendants obtain and possess a consumer's Private Health Information, such as their name, social security number, incomes, employment information, phone number, medical history, prescription records, medical diagnoses, medical treatment history, etc. ("PHI records").

8.  Plaintiff was a consumer of the UniCare PPO and/or UniCare HMO for the period of 2003–2005, while he was employed as an Assistant States Attorney for Cook County, Illinois.

9.  On April 2, 2008, UniCare sent a letter, a copy of which is attached hereto as Exhibit A, via its counsel, to the Attorney General of the State of New Hampshire, informing her of a security breach regarding its customers' PHI records. The letter disclosed that nearly one year prior, in approximately April 2007, UniCare's PHI records were not properly secured for a period of time, causing the PHI records of certain UniCare customers to have been accessible to the public via the Internet.

10. Following the April 2007 security breach, UniCare claimed to have initiated an assessment, secured PHI records, and to have notified consumers whom it believed might have been impacted. *See* Exhibit A. Plaintiff received no such notification at that time.

11. In its letter of April 2, 2008, UniCare states that on December 27, 2007, over ten months after the security breach, it learned that the PHI records of additional members beyond those first believed to have been unlawfully made available were accessible to the public via the Internet. *See* Exhibit A.

12. On or about April 11, 2008, Plaintiff learned that his PHI records had been among those made available to the public because of the April 2007 security breach. *See* Letter to Plaintiff, attached hereto as Exhibit B.

13. In UniCare's April 4, 2008 letter to Plaintiff, UniCare acknowledged that the security breach would cause Plaintiff concern, and that the breach placed Plaintiff at a "potential risk". *See* Exhibit B.

14. Plaintiff's and the Class' private, nonpublic PHI records have been improperly and illegally made available and accessible to the public by Defendants.

15. Plaintiff did not agree to Defendants making his PHI records available to the public.

## CLASS ACTION ALLEGATIONS

16. Pursuant to 735 ILCS 5/2-802, Plaintiff brings this class action, individually, on behalf of all persons throughout the United States, whose PHI records were made available to the public without prior consent and/or without a permissible purpose under the Fair Credit Reporting Act. The Class does not include Defendants, their officers, directors, agents, or employees (the "Class").

3

17. On information and belief, the Class is comprised of many hundreds if not thousands of consumers, making joinder impracticable. Disposition of this matter as a class action will provide substantial benefits to both the parties and the Court.

18. The rights of each member of the Class were violated in a similar fashion based upon Defendants' uniform, intentional, reckless, and/or negligent actions.

19. Questions of law and fact common to the Class predominate over questions that may affect individual Class members, and include the following:

   a. Whether Defendants allowed unauthorized access to Plaintiff's and the Class' PHI records within the meaning of 15 U.S.C. § 1681a(d)(1);

   b. Whether Defendants are consumer reporting agencies as defined by 15 U.S.C. § 1681a(f);

   c. Whether Defendants violated FCRA by failing to properly maintain reasonable procedures designed to limit the accessibility of Plaintiff's and the Class' PHI records to the permissible purposes outlined under FCRA;

   d. Whether Defendants violated FCRA when they allowed the public to access Plaintiff's and the Class' PHI records;

   e. Whether Defendants violated FCRA when they failed to secure Plaintiff's and the Class' PHI records, allowing the public unfettered access to the records via the Internet;

   f. Whether Defendants or their agents had a permissible purpose to allow unfettered access to Plaintiff's and the Class' PHI records;

   g. Whether Defendants were negligent in failing to properly maintain reasonable procedures designed to limit the accessibility of PHI records;

   h. Whether Defendants' conduct was intentional;

   i. Whether Defendants' conduct was reckless;

   j. Whether Defendants were negligent in their collection and storage of Plaintiff's and the Class' PHI records;

   k. Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and the Class' PHI records;

l.     Whether Defendants owed a duty to Plaintiff and the Class to protect and secure their PHI records;

m.    Whether Defendants breached their duty to exercise reasonable care in storing Plaintiff's and the Class' PHI records by storing that information online in such a manner that it was accessible to the public via the Internet;

n.     Whether Defendants breached a duty by failing to keep Plaintiff's and the Class' PHI records secure;

o.     Whether Defendants were negligent in failing to keep Plaintiff's and the Class' PHI records secure;

p.     Whether Plaintiff and the Class have sustained damages, and if so, what is the proper measure of those damages;

q.     Whether Defendants were negligent in failing to timely disclose the security breach to Plaintiff and the Class;

r.     Whether Defendants' conduct violates the Illinois Insurance Code; and

s.     Whether Defendants' conduct constitutes an invasion of Plaintiff's and the Class' privacy.

20.    Plaintiff will fairly and adequately represent and protect the interests of the Class in that he has no interest that is antagonistic to or that irreconcilably conflicts with those of other members of the Class.

21.    Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

22.    A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiff's and Class members' claims.  Plaintiff and members of the Class have suffered irreparable harm as a result of Defendants' intentional, reckless, negligent, and unlawful conduct.

23.    Certification of a class action to resolve these disputes will reduce the possibility of repetitious litigation involving, potentially, many thousands of Class members.

## COUNT I

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

(1)-(23) Plaintiff re-alleges paragraphs 1 through 23 of this Complaint as if fully set forth

herein in this Count I.

24.     The Fair Credit Reporting Act ("FCRA") was created to require that consumer reporting

agencies adopt reasonable procedures for meeting the needs of commerce for consumer

credit, personnel, insurance, and other information in a manner that is fair and equitable

to consumers, with regard to the confidentiality, accuracy, relevancy, and proper

utilization of such information. *See* 15 U.S.C. § 1681 *et. seq.*

25.     Under FCRA, a "consumer report" means:

> any written, oral, or other communication of any information by a
> consumer reporting agency bearing on a consumer's credit
> worthiness, credit standing, credit capacity, character, general
> reputation, personal characteristics, or mode of living which is
> used or expected to be used or collected in whole or in part for the
> purpose of serving as a factor in establishing the consumer's
> eligibility for credit or insurance to be used primarily for personal,
> family, or household purposes; employment purposes; or any other
> purpose authorized under [15 U.S.C. § 1681(b)]. 15 U.S.C. §
> 1681a(d)(1).

26.     Under FCRA, a "consumer reporting agency" means:

> any person which, for monetary fees, dues, or on a cooperative
> nonprofit basis, regularly engages in whole or in part in the
> practice of assembling or evaluating consumer credit information
> or other information on consumers for the purpose of furnishing
> consumer reports to third parties, and which uses any means or
> facility of interstate commerce for the purpose of preparing or
> furnishing consumer reports. 15 U.S.C. § 1681a(f).

27.     Plaintiff and the other Class members are "consumers" or "persons" as defined under

FCRA. *See* 15 U.S.C. § 1681a(b), (c).

28.   Defendants are Consumer Reporting Agencies as defined under FCRA because they, on a

cooperative nonprofit basis and/or for monetary fees, regularly engage, in whole or in

part, in the practice of assembling information on consumers for the purpose of

furnishing Consumer Reports to third parties, and use interstate commerce for the

purpose of preparing or furnishing consumer reports. In Defendants' "Member

Confidentiality Statement", attached hereto as Exhibit C, Defendants state that they:

> [C]ollect and use several different types of financial information . .
> . [including] information about your transactions with our
> affiliates, others, or us such as policy coverage, premiums, and
> payment history. We also retain any information we may receive
> from a consumer-reporting agency, such as your credit history.

29.   In Defendants' Member Confidentiality Statement, Defendants also state that the

information they collect, i.e., information related to a consumer's health transactions,

payment history and credit history, is "made available to [their] employees, affiliates or

others who need to service or maintain your policy, to conduct insurance transactions and

functions, or for other legally permitted or required purposes."

30.   The PHI records being made available to the public by Defendants amount to Consumer

Reports as defined under FCRA.

31.   As a Consumer Reporting Agency, Defendants had a duty to maintain reasonable

procedures designed to limit the furnishing of Consumer Reports to the permissible

purposes outlines under FCRA. *See* 15 U.S.C. § 1681e.

32.   In disregard of the rights of Plaintiff and the Class, and in breach of Defendants' duties

owed to Plaintiff and the other Class members, Defendants willfully and/or recklessly did

not maintain reasonable procedures designed to limit the furnishing of Plaintiff's and the

Class' PHI records to the permissible purposes outlined under FCRA, specifically 15 U.S.C. § 1681e.

33. Defendants' conduct was the proximate cause of Plaintiff's and the Class' PHI records being made accessible to unauthorized third parties via the Internet without the consent of Plaintiff or Class members, and for no permissible purpose under FCRA.

34. Defendants' conduct violated FCRA. Plaintiff and the Class were damaged by Defendants' intentional and/or reckless actions.

35. As a result of Defendants' conduct, Plaintiff and the Class are entitled to actual damages sustained or statutory damages of not less than $100 and not more than $1,000 per Class member, as well as the costs and attorneys' fees incurred in bringing this action. 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

[a] Certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class counsel;

[b] Finding that Defendants intentionally and/or recklessly violated the FCRA due to their failure to maintain reasonable procedures designed to limit the furnishing of reports to the permissible purposes outlined under FCRA;

[c] Requiring that Defendants, pursuant to FCRA, pay actual damages sustained or statutory damages of not less than $100 and not more than $1,000 per Class member;

[d]     Requiring Defendants to pay the reasonable attorneys' fees and costs incurred in

bringing this litigation; and

[e]     Providing for the other legal and/or equitable relief as the Court deems

appropriate.

## COUNT II

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

(1)-(23) Plaintiff re-alleges paragraphs 1 through 23 of this Complaint as if fully set forth

herein in this Count II.

36.     The Fair Credit Reporting Act ("FCRA") was created to require that consumer reporting

agencies adopt reasonable procedures for meeting the needs of commerce for consumer

credit, personnel, insurance, and other information in a manner which is fair and

equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and

proper utilization of such information. *See* 15 U.S.C. §1681 *et. seq.*

37.     Under FCRA, a "consumer report" means:

any written, oral, or other communication of any information by a
consumer reporting agency bearing on a consumer's credit
worthiness, credit standing, credit capacity, character, general
reputation, personal characteristics, or mode of living which is
used or expected to be used or collected in whole or in part for the
purpose of serving as a factor in establishing the consumer's
eligibility for credit or insurance to be used primarily for personal,
family, or household purposes; employment purposes; or any other
purpose authorized under [15 U.S.C. § 1681(b)]. 15 U.S.C. §
1681a(d)(1).

38.     Under FCRA, a "consumer reporting agency" means:

any person which, for monetary fees, dues, or on a cooperative
nonprofit basis, regularly engages in whole or in part in the
practice of assembling or evaluating consumer credit information
or other information on consumers for the purpose of furnishing
consumer reports to third parties, and which uses any means or

facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

39. Plaintiff and the other Class Members are "consumers" or "persons" as defined and construed under FCRA. *See* 15 U.S.C. § 1681a(b), (c).

40. Defendants are Consumer Reporting Agencies as defined under FCRA because they, on a cooperative nonprofit basis and/or for monetary fees, regularly engage, in whole or in part, in the practice of assembling or evaluating information on consumers for the purpose of furnishing Consumer Reports to third parties, and use interstate commerce for the purpose of preparing or furnishing consumer reports. In Defendants' "Member Confidentiality Statement", Defendants state that they:

> [C]ollect and use several different types of financial information . . . [including] information about your transactions with our affiliates, others, or us such as policy coverage, premiums, and payment history. We also retain any information we may receive from a consumer-reporting agency, such as your credit history.

41. In Defendants' Member Confidentiality Statement, Defendants also state that the information they collect, i.e., information related to a consumer's health transactions, payment history and credit history, is "made available to [their] employees, affiliates or others who need to service or maintain your policy, to conduct insurance transactions and functions, or for other legally permitted or required purposes."

42. The PHI records that were made available to the public via the Internet by Defendants amounted to Consumer Reports as defined under the FCRA.

43. As a Consumer Reporting Agency, Defendants have a duty to maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purposes outlines under FCRA. *See* 15 U.S.C. § 1681e.

44. In breach of their duty, Defendants were negligent in failing to maintain reasonable procedures to protect Plaintiff's and the Class members' PHI records.

45. As enumerated above, Defendants' negligent conduct was the proximate cause of Plaintiff's and Class members' PHI records being made accessible to the public via the Internet without the consent of Plaintiff or Class members, and for no permissible purpose under FCRA.

46. Defendants' conduct violated FCRA and Plaintiff and the Class have been damaged by Defendants' negligent actions.

47. As a result of Defendants' negligent conduct, Plaintiff and the Class are entitled to actual damages sustained or statutory damages of not less than $100 and not more than $1,000 per Class member, as well the costs and reasonable attorneys' fees incurred in bringing this action. 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

[a] Certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class counsel;

[b] Finding that Defendants negligently violated the FCRA due to their failure to maintain reasonable procedures designed to limit the furnishing of reports to the permissible purposes outlined under FCRA;

[c] Requiring that Defendants, pursuant to FCRA, pay actual damages sustained or statutory damages of not less than $100 and not more than $1,000 per Class member;

11

[d]     Requiring Defendants to pay the reasonable attorneys' fees and costs incurred in bringing this litigation; and

[e]     Providing for the other legal and/or equitable relief as the Court deems appropriate.

## COUNT III

## NEGLIGENCE

(1)-(23)     Plaintiff re-alleges paragraphs 1 through 23 of this Complaint as if fully set forth herein in this Count III.

48.     Defendants came into possession of Plaintiff's and the Class' PHI records and had a duty to exercise reasonable care in safeguarding and protecting such information from being unlawfully made available to the public, compromised and/or stolen.

49.     Defendants had a duty to timely disclose the fact that Plaintiff's and the Class' PHI records within their possession had been, or were reasonably believed to have been, made available to the public via the Internet.

50.     Defendants had a duty to safeguard and protect Plaintiff's and the Class' PHI records in their possession and from becoming available to the public via the Internet. This breach of security was reasonably foreseeable to Defendants.

51.     Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and the Class by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and the Class' PHI records within their possession.

52.     Defendants, through their actions and/or omissions, breached their duty to Plaintiff and the Class by failing to detect and prevent their PHI records from becoming available to the public.

53. Defendants, through their actions and/or omissions breached their duty to timely disclose the fact that Plaintiff's and the Class' PHI records within their possession had been, or were reasonably believed to have been, made available to the public or compromised.

54. But for Defendants' negligent and wrongful breach of their duties owed to Plaintiff and the Class, Plaintiff's and the Class' PHI records would not have been made available to the public.

55. Defendants' failure to exercise reasonable care in safeguarding such information by adopting, implementing, or maintaining appropriate security measures to protect and safeguard Plaintiff's and the Class' PHI records within their possession was the proximate cause of Plaintiff's and the Class' PHI records being made available to the public, viewed and/or stolen by unauthorized third-parties.

56. Plaintiff and the Class suffered and will suffer actual damages including, but not limited to, expenses for credit insurance and monitoring, out of pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

[a]    Certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class counsel;

[b]    Finding that Defendants were negligent in protecting Plaintiff's and the Class' PHI records stored on their computer systems and in their physical possession;

[c]    Requiring Defendants to provide identity theft insurance and monies required to monitor Plaintiff's and the Class' financial accounts, as well as to compensate

anyone who suffers damage as a result of the unauthorized release of their private information;

[d]     Awarding damages to Plaintiff and the Class under the common law theory alleged herein;

[e]     Requiring Defendants to pay the reasonable attorneys' fees and costs incurred in bringing this litigation; and

[f]     Providing for other legal and/or equitable relief as the Court deems appropriate.

## COUNT IV

## BREACH OF IMPLIED CONTRACT

(1)-(23)     Plaintiff re-alleges paragraphs 1 through 23 of this Complaint as if fully set forth herein in this Count IV.

57.     Defendants came into possession of Plaintiff's and the Class' PHI records and had an implied contract in fact or law to protect such information with Plaintiff and the Class via Defendants' respective financial institutions' privacy notices, the inherent confidentiality of Plaintiff's and the Class' PHI records, and pursuant to the Illinois Insurance Code, 215 ILCS 5/1014.[1]

58.     The implied contract required Defendants to not make available to the public and/or unauthorized third-parties Plaintiff's and the Class' PHI records and to safeguard and protect the information from being publicly disseminated, compromised and/or stolen.

59.     Defendants did not safeguard and protect Plaintiff's and the Class' PHI records from being made available to the public, compromised and/or stolen. Indeed, Defendants'

---

[1]Insurance institutions, such as Defendants, may only provide access to a consumer's PHI records pursuant to a valid written request prepared in accordance with the standards established by 215 ILCS 5/1007.

practices, policies and/or own actions facilitated Plaintiff's and the Class' PHI records becoming available to the public via the Internet.

60. Because Defendants failed to safeguard and protect Plaintiff's and the Class' PHI records from being unlawfully made available to the public, compromised and/or stolen, Defendants breached their contract with Plaintiff and the Class.

61. As a result of said breach, Plaintiff and the Class suffered and will continue to suffer actual damages, including but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

[a]    Certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class counsel;

[b]    Finding that Defendants are in breach of their implied contract for failing to secure Plaintiff's and the Class' private PHI stored on their computer systems and in their physical possession;

[c]    Requiring Defendants to provide identity theft insurance and monies required to monitor Plaintiff's and the Class' financial accounts, as well as to compensate anyone who suffers damage as a result of the unauthorized release of their private information;

[d]    Awarding damages to Plaintiff and the Class under the common law theory alleged herein;

[e]     Requiring Defendants to pay the reasonable attorneys' fees and costs incurred in

bringing this litigation; and

[f]     Providing for other legal and/or equitable relief as the Court deems appropriate.

## COUNT V

### VIOLATION OF THE ILLINOIS
### INSURANCE CODE AND THE INSURANCE CODES OF OTHER STATES

(1)-(23)     Plaintiff re-alleges paragraphs 1 through 23 of this Complaint as if fully set forth

here in this Count V.

62.     Pursuant to 215 ILCS 5/1002, the obligations imposed by Article XL of the Insurance

Information and Privacy Protection portion of the Illinois Insurance Code applies to

"insurance institutions . . . [that] collect, receive or maintain information in connection

with insurance transactions." Defendants here are "insurance institutions" for purposes

of the Code.

63.     Plaintiff's and Class members' PHI records that were made available to the public by

Defendants fall within the definition of "Personal Information" as defined in 215 ILCS

5/1003 and as used in Article XL of the Insurance Information and Privacy Protection

portion of the Illinois Insurance Code.

64.     An insurance institution shall not release a consumer's PHI records without a valid

written request submitted by an authorized individual and/or agency and/or in accordance

with 215 ILCS 5/1014.

65.     Defendants allowing Plaintiff's and the Class' PHI Records to become accessible and

available via the Internet, as described above, was in violation of the Insurance

Information and Privacy Protection portion of the Illinois Insurance Code because said

disclosure was not pursuant to a valid, written request submitted by an authorized individual and/or agency and/or in accordance with 215 ILCS 5/1014.

66. Other State Insurance Codes include provisions that are materially and substantially similar to 215 ILCS 5/1014.

67. As a result of Defendants' violation of Article XL of the Insurance Information and Privacy Protection portion of the Illinois Insurance Code (215 ILCS 5/Art. XL), Plaintiff and the Class suffered and will continue to suffer actual damages including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

[a] Certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class counsel;

[b] Finding that Defendants' conduct was in violation of the Illinois Insurance Code;

[c] Requiring Defendants to provide identity theft insurance and monies required to monitor Plaintiff's and the Class' financial accounts, as well as to compensate anyone who suffers damage as a result of the unauthorized release of their private information;

[d] Awarding damages to Plaintiff and the Class under the common law theory alleged herein;

[e] Requiring Defendants to pay the reasonable attorneys' fees and costs incurred in bringing this litigation; and

[f]    Providing for other legal and/or equitable relief as the Court deems appropriate.

## COUNT VI

### INVASION OF PRIVACY

(1)-(23)    Plaintiff re-alleges paragraphs 1 through 23 of this Complaint as if fully set forth herein in this Count VI.

68.    Plaintiff and the Class have a legally protected privacy interest in their PHI records and a reasonable expectation of privacy in such information. This right of privacy includes the right not to have their private information published by Defendant via the Internet.

69.    As alleged herein, Defendants allowed Plaintiff's and the Class' PHI records to be published via the Internet without such persons' knowledge, authorization or consent. The publication of such private facts and information is one that is highly offensive or objectionable to a reasonable person of ordinary sensibilities. The publication of such private facts and information does not include information which is of a legitimate public concern.

70.    Defendants violated the rights of privacy of Plaintiff and the Class by publishing Plaintiff's and the Class' PHI records without their consent on the Internet where they were accessible to third parties.

71.    As a result of Defendants' unlawful conduct, as alleged herein, the privacy rights of Plaintiff and the Class have been violated, and Plaintiff and the Class have been harmed.

72.    Plaintiff and the Class suffered and will continue to suffer actual damages, including but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

[a]    Certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class counsel;

[b]    Finding that Defendants' conduct rises to the level of an invasion of privacy of Plaintiff's and the Class' confidential information;

[c]    Requiring Defendants to provide identity theft insurance and monies required to monitor Plaintiff's and the Class' financial accounts, as well as to compensate anyone who suffers damage as a result of the unauthorized release of their private information;

[d]    Awarding damages to Plaintiff and the Class under the common law theory alleged;

[e]    Requiring Defendants to pay the reasonable attorneys' fees and costs incurred in bringing this litigation; and

[f ]    Providing for other legal and/or equitable relief as the Court deems appropriate.

Dated:        February 6, 2009            James Rowe, on behalf of himself and all
                                          others similarly situated,


                                          By:_____
                                              One of Plaintiff's attorneys

19

Ben Barnow
Sharon Harris
Erich Schork
Blake Strautins
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
(312) 621-2000
Atty. No. 38957

Larry D. Drury
Larry D. Drury, Ltd.
205 West Randolph, Suite 1430
Chicago, IL 60606
(312) 346-7950
Atty. No. 22873



**HINMAN
STRAUB**
ATTORNEYS AT LAW

121 STATE STREET
ALBANY, NEW YORK 12207-1693
TEL 518-436-0751
FAX 518-436-4751

SEAN M. DOOLAN
DIRECT PHONE: 518-689-7217
E-MAIL: SDOOLAN@HINMANSTRAUB.COM

April 2, 2008                    VIA FACSIMILE AND FEDERAL EXPRESS

Kelly A. Ayotte
Attorney General
New Hampshire Department of Justice
33 Capitol Street
Concord, New Hampshire 03301

Re: Notice of Security Breach

Dear Ms. Ayotte:

Please be advised that we represent UniCare and we are hereby notifying your office of a breach of security affecting approximately 4 New Hampshire residents.

Approximately one year ago, it was discovered that a computer server that contained protected health information (PHI) was not properly secured by a third party vendor for a period of time, which caused the PHI of certain UniCare members to be temporarily accessible via the internet. The PHI contained member ID numbers (which in some cases, included a social security number) and certain pharmacy/medical data that pertained to the member or the member's dependents enrolled under the member's health plan. We quickly initiated an assessment and secured the PHI. We implemented additional security measures to ensure that similar incidents do not recur. We also notified the members who we determined might have been impacted. On December 27, 2007, we discovered that the PHI of additional members might have been accessible via the internet at the time of this incident. UniCare is addressing this issue with the vendor. Upon notification of the loss, UniCare immediately initiated an investigation into the matter. UniCare has no indication at this time that any instances of identity theft related to this situation have occurred.

On April 4, 2008, a letter regarding this incident will be mailed to all affected members. A copy of that letter is attached. To protect all members impacted, UniCare is offering to pay for a credit monitoring service through Equifax Credit Watch for a period of one year. This service will monitor credit files and notify members of any suspicious activity that could indicate potential identity theft. Both the vendor and UniCare are conducting a thorough inspection of their security practices to identify opportunities for improvement.

HINMAN STRAUB P.C.                          DATE    APRIL 2, 2008          PAGE 2

Please contact me with any questions or if you wish to discuss this matter further.

Sincerely,

Sean M. Doolan

**UNICARE.** 233 S. Wacker Drive
Ste 3900
Chicago, Illinois 60606

106685

IIIn.IInI.IIn.IInI.IIn.IIn.IId
#BWNCQXF
#UNICAREM00000003#
JAMES R ROWE
3527 BRITTA
FRANKLIN PARKIL60131

Si necesita ayuda en español para
entender este documento, puede llamar
al número de teléfono que aparece en
esta comunicación y solicitar hablar con
un representante de servicio al cliente
que hable español.

Date: April 11, 2008

Dear James R Rowe:

This letter is to notify you of a privacy issue that has come to our attention. We have already taken steps to address and correct this situation. However, we want to make you aware of what has occurred, what steps we have taken and are taking to prevent it from happening again, and how we will work with you to safeguard your protected health information (PHI).

Approximately one year ago it was discovered that a computer server that contained PHI was not properly secured by a third-party vendor for a period of time, and that the PHI of certain members was temporarily accessible via the internet. The PHI contained member ID numbers (which, in some cases, included a social security number) and certain pharmacy/medical data that pertained to the member or the member's dependents enrolled under the member's health plan. We quickly initiated an assessment and did secure the PHI on that server. We also notified the members who we determined might have been impacted.

Although when the security breach occurred, we believed that we had identified all of our members who had been impacted, we have recently discovered that the PHI of additional members was potentially accessible via the internet when the temporary security breach occurred. We also recently learned that another server was not properly secured by a third-party vendor over the last twelve months, although it is important to note that the PHI on that server could only be potentially accessed by very specific, targeted queries and could not be viewed otherwise. Upon learning of this issue, we immediately took steps to secure the PHI. This PHI included information that pertained to you and/or your dependents enrolled under your health plan. We are therefore providing you with this notice as a precaution.

We are committed to protecting the privacy and security of your PHI. We understand that you may be concerned, so we want to offer you free credit monitoring for one year through Equifax Credit Watch. This service monitors your credit file and notifies you of any unusual or suspicious activities that could indicate potential identity theft. Details on how to enroll in this service are provided in the attachment to this letter. You will be asked to enter this promotion code 50168-1669924013 when you enroll. Please enroll by May 30, 2008. We also suggest that you take the steps outlined in the enclosed information sheets to further reduce any potential risk to you and your family members.

We apologize for any inconvenience or concern this may have caused you. If we can be of any further assistance or answer any questions regarding the information in this letter, please call (866)-530-9360 between the hours of 8 a.m. and 5 p.m. Central Time Monday through Friday.

Sincerely,

Jimmy Lee
Vice President & General Manger, Unicare

106686

### Free Credit Monitoring

We have arranged with Equifax Personal Solutions to help you protect your identity and your credit information at no cost to you. The steps to follow are:

1. Enroll in Equifax Credit Watch™ Gold identity theft protection service. This service is being provided to you at no cost.
2. Additionally, you may choose to adopt an increased level of protection by placing a "fraud alert" on your credit file at Equifax and the other two credit reporting agencies.

### Equifax Credit Watch™ Gold

Equifax Credit Watch will provide you with an "early warning system" to changes to your credit file and help you to understand the content of your Equifax credit file. The key features and benefits are listed below.

Your Equifax Credit Watch 1-year membership service provides you with:

o   Comprehensive credit file monitoring of your Equifax credit report with daily notification of key changes to your credit file.
o   Wireless alerts and customizable alerts available
o   Unlimited access to your Equifax Credit Report™
o   $20,000 in identity theft insurance with $0 deductible, at no additional cost to you †
o   24 by 7 live agent Customer Service to assist you in understanding the content of your Equifax credit information, to provide personalize identity theft victim assistance and assistance in initiating an investigation of inaccurate information.

### Two Ways to Enroll

#### Internet
Equifax has a simple Internet-based verification and enrollment process.
Visit: www.myservices.equifax.com/gold

1. Consumer Information: complete the form with your contact information (name, address and e-mail address) and click "Continue" button. The information is provided in a secured environment.
2. Identity Verification: complete the form with your Social Security Number, date of birth, telephone #s, create a User Name and Password, agree to the Terms of Use and click "Continue" button. The system will ask you up to two security questions to verify your identity.
3. Payment Information: During the "check out" process, provide the promotional code from page 1 in the "Enter Promotion Code" box. (No spaces but include dash.) After entering your code press the "Apply Code" button and then the "Submit Order" button at the bottom of the page. (This code eliminates the need to provide a credit card number for payment.)
4. Order Confirmation: Click "View My Product" to access your Equifax Credit Report.

#### Phone Call
To sign up for US Mail delivery of the service, dial 1-866-937-8432 for access to the Equifax Credit Watch automated enrollment process. Note that all credit reports and alerts will be sent to you via US Mail only.

1. Promotion Code: You will be asked to enter your promotion code from page 1 (no spaces, no dash)
2. Customer Information: You will be asked to enter your home telephone number, home address, name, date of birth and Social Security Number

3. Permissible Purpose: You will be asked to provide Equifax with your permission to access your credit file and to monitor your file. Without your agreement, Equifax can not process your enrollment

4. Order Confirmation: Equifax will provide a confirmation number with an explanation that you will receive your Fulfillment Kit via the US Mail (when Equifax is able to verify your identity) or a Customer Care letter with further instructions (if your identity can not be verified using the information provided).

### Directions for placing a Fraud Alert

A fraud alert is a consumer statement added to your credit report. This statement alerts creditors of possible fraudulent activity within your report as well as requests that they contact you prior to establishing any accounts in your name. Once the fraud alert is added to your credit report, all creditors should contact you prior to establishing any account in your name. To place a fraud alert on your Equifax credit file, you may contact our auto fraud line at 1-877-478-7625, and follow the simple prompts. Once the fraud alert has been placed with Equifax, a notification will be sent to the other two credit reporting agencies, Experian and Trans Union, on your behalf.

### Additional information for Maryland residents

| Federal Trade Commission | Office of the Attorney General |
| --- | --- |
| www.ftc.gov | www.oag.state.md.us |
| 1-877-ID-THEFT | 1-888-743-0023 |

### For Massachusetts residents

You can place a security freeze on your credit report, prohibiting a credit reporting agency from releasing any information from the report without written authorization. You can send a written request to each of the credit bureaus by regular, certified or overnight mail. Each credit bureau has specific requirements to place a security freeze. See contact information below for more information.

| Credit Bureaus | | |
| --- | --- | --- |
| Equifax | Experian | Trans Union |
| P.O. Box 105873 | P.O. Box 949 | P.O. Box 390 |
| Atlanta, Ga. 30348-5873 | Allen, Tx. 75013-0949 | Springfield, Pa. 19064-0390 |
| Credit 1-800-997-2493 | Credit 1-888-397-3741 | Credit 1-800-916-8800 |
| Fraud 1-800-525-6285 | Fraud 1-888-397-3742 | Fraud 1-800-680-7289 |
| www.equifax.com | www.experian.com | www.tuc.com |



## OUR MEMBER CONFIDENTIALITY STATEMENT

UNICARE LIFE & HEALTH INSURANCE COMPANY
UNICARE HEALTH INSURANCE COMPANY OF THE MIDWEST
UNICARE HEALTH PLANS OF THE MIDWEST, INC.
UNICARE HEALTH PLAN OF OKLAHOMA, INC.
UNICARE HEALTH INSURANCE COMPANY OF TEXAS
UNICARE HEALTH PLANS OF TEXAS, INC.
UNICARE HEALTH PLAN OF VIRGINIA, INC.

We protect the confidentiality of our members' personal financial and health information as required by law, accreditation standards and our internal policies and procedures. This Member Confidentiality Statement explains your rights, our legal duties and our privacy practices.

### Your Financial Information

In order to conduct health insurance activities, we collect and use several different types of financial information. This includes information that you provide directly to us on applications or other forms, such as your name, address, age, and information about dependents. We accumulate information about your transactions with our affiliates, others, or us such as policy coverage, premiums, and payment history. We also retain any information we may receive from a consumer-reporting agency such as your credit history.

We use physical, electronic, and procedural safeguards to protect your confidential information. We make it available only to our employees, affiliates or others who need it to service or maintain your policy, to conduct insurance transactions and functions, or for other legally permitted or required purposes. We do not disclose any nonpublic personal information about our members or former members to anyone, except as permitted by law.

### Your Health Information

THIS NOTICE DESCRIBES HOW MEDICAL INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED AND HOW YOU CAN GET ACCESS TO THIS INFORMATION. PLEASE REVIEW IT CAREFULLY.

We collect, use and disclose information provided by and about you for health care payment and operations, or when we are otherwise permitted or required by law to do so.

For Payment: We may use and disclose information about you in managing your account or benefits, and paying claims for medical care you receive through your plan. For example, we maintain information about your premium and deductible payments. We may also provide information to a doctor's office to confirm your eligibility for benefits, or we may ask a hospital for details about your treatment so that we may review and pay the claim for your care.

For Health Care Operations: We may use and disclose medical information about you for our operations. For example, we may use information about you to review the quality of care and services you receive; to provide you case management or care coordination services, such as for asthma, diabetes, or traumatic injury; or to seek accreditation.

We may contact you to provide information about treatment alternatives or other health-related benefits and services. For example, when you or your dependents reach a certain age, we may notify you about additional

products or programs for which you may become eligible, such as Medicare supplements or individual coverage. We may also notify you about routine medical check-ups and tests.

We may, in the case of some group health plans, share limited health information with your employer or other organizations that help pay for your membership in the plan, in order to enroll you, or to permit the plan sponsor to perform plan administrative functions. Plan sponsors that receive this information are required by law to have safeguards in place to protect it from inappropriate uses.

As Permitted or Required by Law: Information about you may be used or disclosed to regulatory agencies, such as during audits, licensure or other proceedings; for administrative or judicial proceedings; to public health authorities; or to law enforcement officials, such as to comply with a court order or subpoena.

Authorization: Other uses and disclosures of protected health information will be made only with your written permission, unless otherwise permitted or required by law. You may revoke this authorization, at any time, in writing. We will then stop using your information for that purpose. However, if we have already used your information based on your authorization, you cannot take back your agreement for those past situations.

## Your Rights

Under regulations that will be in effect in April 2003, you will have additional rights over your health information. Under the new rules, you will have the right to:

- Send us a written request to see or get a copy of information that we have about you, or amend your personal information that you believe is incomplete or inaccurate. If we did not create the information, we will refer you to the source, such as your physician or hospital.

- Request additional restrictions on uses and disclosures of your health information. We are not required to agree to these requests.

- Request that we communicate with you about medical matters using reasonable alternative means or at an alternative address, if communications to your home address could endanger you.

- Receive an accounting of our disclosures of your medical information, except when those disclosures are made for treatment, payment or health care operations, or the law otherwise restricts the accounting. We are not required to give you a list of disclosures made before April 14, 2003.

## Complaints

If you believe your privacy rights have been violated, you have the right to file a complaint with us, or with the federal government. You will not be penalized for filing a complaint.

## Copies and Changes

You have the right to receive an additional copy of this notice at any time. Even if you have agreed to receive this notice electronically, you are still entitled to a paper copy.

We reserve the right to revise this notice. A revised notice will be effective for information we already have about you as well as any information we may receive in the future. We are required by law to comply with whatever privacy notice is currently in effect. We will communicate any changes to our notice through subscriber newsletters, direct mail, and/or our website.

## Contact Information

If you want to exercise your rights under this notice or if you wish to communicate with us about privacy issues or to file a complaint with us, please contact customer service at the phone number printed on your identification card.