

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES ROWE, on behalf of himself and all )
others similarly situated, )
                                          )
             Plaintiff, )
                                          )        No. 09 C 2286
      v. )
                                          )        The Honorable William J. Hibbler
UNICARE LIFE AND HEALTH INSURANCE )
COMPANY, and WELLPOINT, INC., both )
Indiana corporations. )
                                          )
             Defendants. )

## MEMORANDUM OPINION AND ORDER

In April 2008, Defendants mailed a form letter to Plaintiff Rowe and other members of Defendants' insurance plans notifying them that some of their personal information was temporarily accessible to the public on the Internet. On the basis of his allegations that Defendants unlawfully published his personal information, Rowe filed this lawsuit, making claims of: (1) willful and negligent violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*; (2) violation of the Illinois Insurance Information and Privacy Protection Act (IIPPA), 215 ILCS 5/1001, *et seq.*; and (3) common law claims of invasion of privacy, negligence, and breach of implied contract. He seeks to bring his claims on behalf of a class of similarly situated individuals. Defendants now move to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court DENIES Defendants' motion.

## BACKGROUND

Plaintiff Rowe is a member of one of Defendants' insurance plans, and seeks to bring this suit on behalf of a class of similarly situated members. In April 2008, Defendants mailed a form

1

letter to Rowe and other members to inform them that some of their personal information was temporarily available to the public online. The information included member identification numbers, which sometimes included social security numbers, and some medical and pharmacy information pertaining to members and their dependents. The letter indicated that the information exposed was protected health information (PHI). Because PHI can include income and employment information, Rowe alleges that this information was potentially part of the exposure. In the letter, Defendants also offered to provide one year of credit monitoring to those affected.

Rowe does not allege that any of his information was stolen or that anyone not authorized to access the information accessed it. However, he alleges that he was harmed in the following ways: (1) he suffered anxiety and emotional distress because his personal information was exposed and he was made vulnerable to identity theft; (2) he suffered an increase in his risk of incurring future harm such as identity theft; (3) he was forced to spend time and money on monitoring his credit; (4) he suffered some injury to his possessory rights in his PHI; and (5) his privacy was invaded. Defendants' motion to dismiss focuses mainly on Rowe's failure to allege that any unauthorized person accessed any of the exposed information.

## DISCUSSION

### I. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks,

2

brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

## II. FCRA Claims

As noted above, Defendants' motion focuses on the fact that Rowe has not alleged that anyone viewed his information, or that of any of the class members, who was not authorized to do so. However, Defendants' challenges to the FCRA claims are grounded in another issue as well. Defendants essentially make two arguments regarding the claims of willful violations of the FCRA, and three arguments regarding the claims of negligent violations. First, with respect to all of the FCRA claims, Defendants argue: (a) that there was no "communication" of protected information as required for a violation of the FCRA because there are no allegations that there was an audience receiving the information; and (b) that the information at issue does not fall into any of the categories of information protected by the FCRA. Second, Defendants point out that a Plaintiff can only recover actual damages for a negligent violation, *see* 15 U.S.C. § 1681o, and argue that Rowe has not pleaded actual damages. Because Defendants challenge all of Rowe's other claims on the grounds that they have not pleaded actual damages, the Court will address those arguments together.

### A. "Communication" under the FCRA

The FCRA regulates the preparation and dissemination of "consumer reports" in order to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The FCRA defines a "consumer report" to be

3

any written, oral, or other *communication* of any information by a
consumer reporting agency bearing on a consumer's credit
worthiness, credit standing, credit capacity, character, general
reputation, personal characteristics, or mode of living which is
used or expected to be used or collected in whole or in part for the
purpose of serving as a factor in establishing the consumer's
eligibility for--

(A) credit or insurance to be used primarily for personal, family, or
household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1) (emphasis added). Defendants first challenge to Rowe's FCRA claims

is that he has not alleged a "communication" of any of the information in question and has

therefore failed to allege a cause of action under the FCRA. Defendants base their challenge on

the notion that a "communication" requires a receptive audience, and that there are no allegations

in the complaint that any unauthorized person ever accessed any of the information made

available by the Defendants.

In support of this argument, Defendants rely on dictionary definitions of the term

"communication," as well as some relevant case law. The dictionary definitions provided by

Defendants are not clearly supportive of either party's position. One definition they provide for

"communication" is "[t]he expression or exchange of information by speech, writing, gestures,

or conduct; the process of bringing an idea to another's perception." *Black's Law Dictionary*

296 (8th ed. 2004). While the second clause of this definition certainly lends credence to the

Defendants' argument, the use of the term "expression" in the first clause can be read as

supportive of Rowe's position. If information need only be "expressed" in order for there to be a

"communication," then the issue of whether anyone accessed the information may be irrelevant.

4

The other definition provided by Defendants for "communication" is "the act or action of imparting or transmitting," and is similarly inconclusive for the Court's purposes.

Defendants do also rely on some case law in support of their position, including one case from the Seventh Circuit, *Wantz v. Experian Information Solutions*, 286 F.3d 829 (7th Cir. 2004). In *Wantz*, an FCRA case, the court affirmed summary judgment in favor of the defendant because the plaintiff failed to put forth competent evidence that he was entitled to damages. *Id.* at 832. The court held that there could not be a consumer report "without disclosure to a third party." *Id.* at 834. Because the plaintiff put forth no evidence that the defendant disclosed his information to a third party, the court found that he could not establish the existence of a consumer report. *Id. Wantz* does support Defendants' argument that disclosure to a third party is important in proceeding on an FCRA theory, but it does not control the Court's decision on the instant motion. The court in *Wantz* was ruling on an appeal of summary judgment, not on a motion to dismiss. On a motion to dismiss, the Court draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc.*, 522 F.3d at 799. Given the widespread exposure of the information in this case, the Court may properly make the inference that the information was accessed at some point for the purposes of this motion only. Thus, even if the exposure itself does not satisfy *Wantz*'s requirement of disclosure to a third party, the Court finds that the Complaint supports the inference that such disclosure took place.

## B. Information protected by the FCRA

Defendants' second contention is that the information exposed in this case did not constitute a consumer report because it is not information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." *See* 15 U.S.C. § 2681a(d)(1). They argue that courts have

ruled that disclosures of simple identifying information such as name, address, Social Security number, and other demographic information alone are not sufficient to constitute violations of the FCRA. *See, e.g., In re Nw. Airlines Privacy Litig.*, No. Civ. 04-126, 2004 WL 1278459 (D. Minn. June 6, 2004) (holding that "name, flight number, credit card data, hotel reservation, car rental, and any traveling companions" is not information protected by FCRA). However, the case law cited by Defendants is not only from district courts in other circuits, but is easily distinguishable. Here, the information disclosed included medical information and, according to Rowe's allegations, employment information and income. This information clearly falls into the "personal characteristics" category, if not the "credit worthiness" and "credit capacity" categories. Moreover, the FCRA specifically contemplates the possibility that some of the protected information contained in consumer reports may be "medical information." *See. e.g.,* 15 U.S.C. § 1681a(d)(3). Given that the Defendants' letter and the complaint only indicate generally that "pharmacy/medical data" was amongst the information exposed, the Court must make the inference that this information is the type contemplated by the FCRA. The Court therefore denies Defendants' motion to dismiss as to Rowe's claims of willful FCRA violations.

## III. Actual damages

Defendants concede that Rowe need not plead actual damages in order to succeed on his claims of willful FCRA violations. Defendants claim that Rowe must to do so in order to proceed on the remainder of his claims, however, and argue that he has not done so. Once again, Defendants' argument focuses on the fact that Rowe has not alleged that anyone actually accessed the exposed information. Rowe sets forth a variety of theories for how his allegations do in fact describe actual damages, which the Court addresses below in succession. Then, the

Court addresses Rowe's additional argument that he need not plead actual damages in order to proceed on his claim of breach of privacy.

## A. Anxiety and emotional distress

Rowe alleges that he and other class members have suffered anxiety and emotional distress as a result of Defendants' actions. Defendants argue that, even taking these allegations as true, they do not support a claim for actual damages under the FCRA or under Illinois law.

As to the FCRA, Defendants' arguments are undermined by *Wantz*, a case they cite elsewhere for support. In *Wantz*, the court stated that "[e]motional distress can, in certain circumstances, give rise to actual damages under the [FCRA]." 386 F.3d at 833. The *Wantz* court nonetheless granted summary judgment in favor of the defendant because the plaintiff failed to provide sufficient evidence in support of his claims of emotional distress. However, at this stage in the proceedings, Rowe is not required to provide evidence, only allegations. Because Defendants have provided no argument as to why the circumstances contemplated by *Wantz* are not present here, the Court finds that Rowe has adequately alleged actual damages in support of his claims of negligent FCRA violations. The Court can deny Defendants' motion to dismiss Rowe's FCRA claims on this ground alone, but addresses the remaining arguments regarding damages in order to guide these proceedings as they move forward.

Defendants argue that Rowe's allegations of anxiety and emotional distress are inadequate to support a claim for actual damages under Illinois law as well. They cite to *Doe v. Northwestern University* for the proposition that under Illinois law "[e]motional distress constitutes legally cognizable damage only where the distress is particularly severe...so severe that no reasonable man could be expected to endure it." 289 Ill. App. 3d 39, 45, 682 N.E.2d 145, 150 (Ill. App. Ct. 1997) (internal quotation marks omitted). In that case, the plaintiffs sued after

the defendant sent the plaintiffs a letter notifying them that a dental student who participated in their treatment had later been diagnosed with HIV. *Id.* at 147. The court found that the plaintiffs' allegations supported a finding of nothing more than an "extremely remote possibility of contracting AIDS." *Id.* at 153. The court held that "[i]n the absence of a particularly substantial risk of HIV infection, plaintiffs' reasonable fears were not severe enough to warrant tort compensation." *Id.* Defendants argue that if reasonable fears regarding the risk of HIV infection are not severe enough to constitute cognizable damages, then the fear of identity theft must also fail to support a claim as a matter of law.

However, *Doe* addressed a unique area of the law in which courts have wrestled with the fact that "[w]here hysterical fear of a disease is sufficiently widespread, and popular knowledge concerning its etiology is limited, a plaintiff may foreseeably experience severe emotional distress without medically verifiable evidence of a substantially increased risk of contracting the disease." *Id.* at 151. The *Doe* court recognized that general concerns about allowing recovery for emotional distress "particularly apply to claims that a defendant's negligence has caused a plaintiff to fear future illness." *Id.* Thus, in order to avoid rewarding ignorance about the disease and its causes, the *Doe* court decided to limit "broad recovery" and only allow plaintiffs to proceed upon allegations supporting a finding of a "substantial risk" of infection. *Id.* at 151-53. The court did not, as Defendants imply, suggest that the fear of contracting HIV or AIDS could not give rise to sufficiently severe emotional distress to constitute legally cognizable damages.

Here, Defendants do not seem to challenge whether Rowe and the purported class members were put at a "substantial risk" of identity theft or some other harm. Instead, they argue that Rowe must plead more about the type of emotional distress he suffered in order to satisfy the law's requirement that his suffering be severe. *Doe* does not provide much guidance

8

on that issue, except to reiterate that emotional distress must be severe to be cognizable. Given the liberal pleading requirements of the federal courts, *see* Fed. R. Civ. P. 8(a), and the requirement that the Court make all inferences in Rowe's favor at this stage, the Court will not assume that Rowe's allegations cannot support a finding of severe emotional distress. Thus, the Court denies Defendants' motion as to the Illinois claims as well.

## B. Increased risk of future harm

Rowe also puts forth a theory for recovery of damages based on the increased risk of future harm he and his fellow class members incurred as a result of the exposure of their personal information. Defendants argue that this theory is invalid under both the FCRA and Illinois state law.

### 1. State law

The Illinois Supreme Court made clear that a plaintiff may recover damages for the increased risk of future harm in *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 503-04, 771 N.E.2d 357, 370 (2002), settling a split in the state's appellate courts and overturning decades-old precedent. *Id.* However, this does not resolve the issue in the instant case because the holding in *Dillon* was complicated by another Illinois Supreme Court ruling in *Williams v. Manchester*, 229 Ill. 2d 404, 888 N.E.2d 1 (2008). In *Williams*, the Court interpreted *Dillon* to stand for the proposition that "an increased risk of future damages is an *element of damages* than can be recovered for a present injury," noting that the increased risk "is *not* the injury itself." *Id.* at 13 (emphasis in original). In *Dillon*, plaintiff sought damages in a medical malpractice action for the increased risk of future harm she suffered as a result of the fact that the defendants' actions left her with a piece of a catheter partially imbedded inside her heart with one end floating freely. 771 N.E.2d at 361-62. The Court in *Williams* reasoned that the plaintiff's present injury was

9

having the catheter imbedded in her heart and that it was on the basis of this present injury that she was able to collect damages. 888 N.E.2d at 14. There is some language in the *Dillon* opinion that implies that the Court may have in fact contemplated the increased risk of future injury as a present injury, *see, e.g.,* 771 N.E.2d at 367 (citing other cases for rationale that "the increased risk [of future harm] is itself a present injury which should be compensable as any other present injury"). Adding to the murkiness surrounding to this issue, the *Williams* Court rests its conclusion that damages are not recoverable on alternative grounds as well, 888 N.E.2d at 14, arguably rendering its pronouncement on the *Dillon* case mere dicta. However, this is the Court's most recent case addressing the issue, and its interpretation of *Dillon* is the primary ground upon which it rests. Thus, the Court must follow the *Williams* decision.

Beyond simply establishing that the increased risk of future harm is not a present injury, the *Williams* decision also rules out the possibility that in this case the exposure of personal information might be the present injury providing the basis for recovery of damages for increased risk of future harm. In *Williams*, the plaintiff sought to recover damages on behalf of her unborn fetus for the increased risk of future harm that the fetus suffered as a result of being exposed to radiation during the plaintiff's treatment following a car accident. 888 N.E.2d at 13. This case presents an analogous set of facts. Rowe alleges that his personal information was exposed to the public, thereby increasing the likelihood that he would be the victim of identity theft or some other harm in the future. The fetus in *Williams* was exposed to radiation, thereby increasing the likelihood that it would suffer from health consequences in the future. By finding that the plaintiff in *Williams* had not set forth a present injury to the fetus that could support a lawsuit, the Illinois Supreme Court limited Rowe's viable theories for recovery here. Rowe may collect damages based on the increased risk of future harm he incurred, but only if he can show

that he suffered from some present injury beyond the mere exposure of his information to the public. For instance, if he is successful in showing that he suffered cognizable anxiety and emotional distress, Rowe may be able to recover future damages as well.

While it may seem odd to allow Rowe to collect damages based on his vulnerability to identity theft only if he can prove a substantively different type of present injury such as emotional distress, this result is in concert with the principles that led the *Dillon* Court to its decision in the first place. The *Dillon* Court parted from decades-old precedent in part because of the injustice that might otherwise stem from applying that precedent's in conjunction with another well-established principle of Illinois law – the principle of single recovery. 771 N.E.2d at 369. Because a plaintiff cannot bring successive actions for a single tort whenever he or she suffers damages in the future, prohibiting recovery for future damages might result in an injustice to plaintiffs who suffer injuries whose effects are felt over a long period of time. *Id.* However, courts need not be concerned with this potential injustice in a case where the plaintiff has not suffered a present injury. A court may dismiss such a case without prejudice, allowing the plaintiff leave to bring a claim once the plaintiff has in fact suffered an injury.

### 2. FCRA

As an initial matter, the Court notes that the Seventh Circuit has conclusively held that, for the purposes of establishing standing to sue, "the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007). Thus, under the FCRA, the question is not whether Rowe has alleged an injury, but whether damages can be awarded for such an injury. There does not appear to be any binding precedent addressing this issue within

11

the context of the FCRA. However, the United States Supreme Court has, at least by negative implication, ruled that future damages may be recovered under federal law. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339, 91 S. Ct. 795, 806, 28 L. Ed. 2d 77 (1971). However, in so doing, the Court also noted that a plaintiff cannot recover future damages if "their accrual is speculative or their amount and nature unprovable." *Id.* Thus, the Court will use this common sense rule in assessing whether Rowe is entitled to damages for the increased risk of future harm as this case proceeds.

## C. Credit monitoring

Defendants also challenge Rowe's claim that the time and money he spent on monitoring his credit constitute actual damages. The Court notes, as a preliminary matter, that the fact that Defendants provided free credit monitoring to Rowe and others is not relevant to this argument. If credit monitoring costs can constitute actual damages, then Defendants may present evidence about the services they provided in support of an argument about how to calculate those damages. The fact that Defendants made attempts to mitigate the costs of credit monitoring, however, does not resolve the question of whether credit monitoring costs are actual damages.

Defendants rely heavily on *Pisciotta v. Old National Bancorp*, 499 F.3d 629 (7th Cir. 2007) in support of their argument. In *Pisciotta*, the plaintiffs brought claims under Indiana law for the credit monitoring costs they incurred after a hacker obtained access to some of their personal information that was under the defendant's control. *Id.* at 631. The district court dismissed the case, finding that credit monitoring costs were not compensable damages under Indiana law. *Id.* at 635. After an in-depth analysis of Indiana law, the appellate court upheld the decision because there was no precedent supportive of the opposite conclusion and federal courts

12

sitting in diversity should avoid inventing truly novel tort claims on behalf of a state. *Id.* at 639-40.

*Pisciotta* does not provide as much guidance as Defendants posit, however. The case involves an interpretation of Indiana law, and is therefore only persuasive insofar as Indiana law is analogous to Illinois and FCRA law. Defendants point out that the Illinois Personal Information Protection Act, 815 ILCS 530/1, *et seq.*, is quite similar to the Indiana statute analyzed by the *Pisciotta* court. They note that while, unlike the Indiana statute, it does provide a private of action, it only requires that database owners disclose security breaches, not that they "compensate affected individuals for the inconvenience or potential harm to credit that my follow." *See Pisciotta*, 499 F.3d at 637. However, Defendants neglect to address the fact that Rowe has brought suit under a different Illinois statute, the HPPA, which does provide a private right of action to recover damages suffered as a result of an unlawful disclosure of protected information. 210 ILCS 5/1021. Thus, the Court need not be concerned about inventing a truly novel claim on behalf of Illinois in this case. Moreover, given the fact that Illinois courts do allow plaintiffs to recover damages based on the increased risk of future harm, it is appropriate to allow present damages that are meant to mitigate that increased risk.

Defendants cite *Aliano v. Texas Roadhouse Holdings LLC*, No. 07 C 4108, 2008 WL 5397510 (N.D. Ill. Dec. 23, 2008) in support of their argument that *Pisciotta* provides guidance under the FCRA. In *Aliano*, the plaintiff alleged that the defendant negligently violated the FCRA by printing receipts displaying more than the last five digits of credit or debit card numbers or displaying a card's expiration date. *Id.* at *1. The only actual damages the plaintiff alleged were the costs of obtaining credit monitoring services to protect against future harm. *Id.* at *2. As here, the plaintiff did not allege that anyone ever obtained his information, that his

accounts were compromised, or that his identity or credit were harmed. *Id.* Relying on *Pisciotta* and other cases, the court found the plaintiff's allegations insufficient to state a cause of action based on a failure to allege actual damages. *Id.* at *4. While this case is on point, the Court does not find its reasoning entirely persuasive in this case. As noted above, federal courts have accepted the increased risk of future harm as an injury and allowed for the recovery of future damages. If Rowe is able to show an increased risk of future harm, the Court may admit evidence regarding the cost of credit monitoring services in order to calculate the damages that can be attributed to that increased risk. Nonetheless, the costs of credit monitoring services are not a present harm in and of themselves. Instead, they may be useful in the evaluating some cognizable future harm.

### D. Possessory rights in PHI

Rowe also argues that he has been harmed through the compromise of his possessory interests in his PHI. Rowe cites to a number of cases from other jurisdictions that arguably support the proposition that he does in fact have such possessory interests. However, Rowe fails to explain how his allegations show any real harm to his possessory interests. He has not alleged that anyone else ever took possession of his information. Thus, any harm that might befall Rowe under this theory falls within the category of an increased risk of future harm discussed above. More importantly, none of the cases cited by Rowe stands for the proposition that the compromise of personal information results in a compensable injury, and Rowe does not seem to argue otherwise. *See State v. Boland*, 800 P.2d 1112, 1115 (Wash. 1990) (finding protected privacy interest in garbage under Washington state constitution); *State v. Mayze*, 622 S.E.2d 836, 841 (Ga. 2005) (referring to state statute's definition of identity theft as an offense "involving the victim's possessory interest in his or her own personal information"); *State Farm Fire & Cas.*

14

*Co. v. Nat'l Research Center for Coll. & Univ. Admissions*, 445 F.3d 1100, 1105 (holding that, under Missouri law, for purposes of defendant's insurance policy, defendant's payments to states following state investigations into whether the defendant violated state consumer protection laws by selling students' personal information constituted "damages" stemming from injury to students); *James v. TRES Computer Sys., Inc.*, 642 S.W.2d 347, 348 (Mo. 1982) (holding that computer data and programs are intangible personal property, not tangible personal property for use tax purposes).

Defendants, on the other hand, cite to *In re Jetblue Airways Corp. Privacy Litigation*, 279 F. Supp. 2d 299 (E.D.N.Y. 2005), in support of their argument that Rowe suffered no harm to any possessory interest in his PHI. The *Jetblue* court did dismiss the plaintiffs' breach of contract claim for a failure to allege damages when their only demand was for the economic value of personal information that the defendant had provided to a third party. *Id.* at 327. However, much of the court's analysis was based on the fact that the plaintiffs claim sounded in contract. *Id.* The court found that the economic value of the plaintiffs' personal information was not contemplated by the contract between the parties and, therefore, that it could not be claimed as damages. *Id.* Obviously, that reasoning does not apply here. The Court does note, however, that here, just as in *Jetblue*, there is "no support for the proposition that [Rowe's] personal information has or had any compensable value in the economy at large." *See id.* Nonetheless, unlike the *Jetblue* court, the Court does not find that Rowe must provide that proof at this stage in the proceedings.

In short, Defendants have failed to show that Rowe has no possessory interest in his PHI. However, at this point, Rowe has not shown that he has such an interest, either. Moreover, he has not alleged any harm to any interest he does have, or provided any theory for how that

15

interest should be valued. If Rowe is to proceed on this theory, he may only recover damages based on the increased risk of future harm to his possessory interests. If he is to do that, he must show that he has such interests, and show how he may be compensated for any such harm.

## E. Invasion of privacy

Finally, Defendants challenge Rowe's claim that he need not show actual damages in order to proceed on a state law claim of invasion of privacy. Rowe points out that Illinois law requires the plaintiff in a suit based on public disclosure of private facts to prove three elements: "(1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person." *Johnson v. Kmart Corp.*, 311 Ill. App. 3d 573, 579, 723 N.E.2d 1192, 1197 (Ill. App. Ct. 2000). Defendants respond by citing *Wynne v. Loyola Univ. of Chicago*, 318 Ill. App. 3d 443, 741 N.E.2d 669 (Ill. App. Ct. 2000), for the proposition that a plaintiff in an invasion of privacy action must show, in Defendants' words, "damage to one's reputation in the form of publication of offensive private facts." *Wynne* does not stand for this proposition, however. Instead, *Wynne* simply reiterates the factors listed above. *Id.* at 676-77. Given the Supreme Court's holding in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S. Ct. 2997, 3011, 41 L. Ed. 2d 789 (1974), that the First Amendment right to free speech prohibits a plaintiff from recovering anything more than actual damages in most libel actions, it is possible that the same restriction applies to invasion of privacy actions. *See* 62A Am. Jur. 2d *Privacy* § 258 (2009) (citing *Gertz*). However, in the case of an invasion of privacy action, "proof of actual harm need not be of pecuniary loss" and actual harm may include damages for emotional distress. *See* Restatement (Second) of Torts § 652H cmts. b & c (1977). Thus, Rowe's allegations support an invasion of privacy tort even under the assumption that the tort has been limited by *Gertz*.

## CONCLUSION

For the above reasons, the Court DENIES Defendants' motion to dismiss.


IT IS SO ORDERED.


_1/5/10_
Dated   1/5/10

Hon. William J. Hibbler
United States District Court